William George NEILSON, Plaintiff in
Error,

v.

Marjorie NEILSON, Defendant in Error.

No. 36367.

Supreme Court of Oklahoma.

Dec. 14, 1954.

Rehearing Denied Jan. 7, 1955.

Charles Sims, William Bishop, Seminole, for plaintiff in error.

Horsley, Epton & Culp, Wewoka, for defendant in error.

ARNOLD, Justice.

William George Neilson filed petition for writ of habeas corpus in the Superior Court of Seminole County against his former wife, Marjorie Neilson, seeking physical custody of the five-year old minor son of the parties. From order denying the writ petitioner appeals.

The undisputed facts are as follows: The parties were divorced in Illinois on June 20, 1950; the decree of divorce entered by the Illinois court awarded custody of the minor child to both parents in alternate six month periods; the decree further provided that neither party could remove the child from the State of Illinois without the consent of the other in writing or without the consent in writing of the court. After the decree was entered petitioner took physical custody of the child, as he was entitled to do under the decree, but did not retain such physical custody; he placed the child in the home of his parents at Roosevelt, Illinois, while he practiced medicine in Jacksonville, Illinois, some 90 miles away. On September 20, 1950, the mother (respondent herein), as she was entitled to do under the decree, took physical custody of the child and retained it for the six-month period allowed her, or until March 20, 1951, at which time petitioner took custody. In the meantime petitioner had been

drafted into the army and at the time he took possession of the child on March 20, 1951, he was stationed at Ft. Benning, Georgia; he took the child to his parents; one month later he remarried; he then had the child in his own home for a period of about two weeks, after which time the child was returned to the home of his parents in Roosevelt, Illinois; respondent, the mother, did not take physical custody of the child in September, 1951, as she was entitled to do, because she was seriously ill, but did take custody as soon as she recovered, in November, 1951; meanwhile petitioner had been sent overseas, a fact which respondent did not know until he had been there a year, nor did she know of petitioner's remarriage until she received an announcement from Germany of the birth of a child to him and his new wife in January, 1952, meanwhile respondent had written petitioner asking his consent to bringing the child to Seminole County, where her parents lived, for a visit; she got no response to this letter. Respondent then had her attorney make application to the Illinois court for permission to bring the child to Oklahoma; on January 30, 1952, the presiding judge wrote a letter permitting respondent "to take her child to Oklahoma for a temporary visit"; respondent brought the child to Seminole County where she and the child have since resided. A year and a half later when respondent returned from overseas he sought physical custody of the child, and upon respondent's refusal to grant such custody brought this action.

Petitioner's evidence shows that his present wife has a child by a former marriage age 5 years which child is living with her; that she and petitioner have a baby daughter by their marriage; that petitioner is now continuing his medical studies as a graduate fellow of the University of Minnesota in the Mayo Clinic at Rochester, Minnesota; that his total income from all sources, including that paid him by the clinic, that paid him under his fellowship, that which he receives under the GI bill, and rentals from a house owned by his present wife in Alabama amounts to $375 per month; that petitioner has bought a home in Rochester and will continue his studies in the Mayo

Clinic there until at least 1956, after which time he expects to enter private practice; that his present wife has obtained a license as a foster-mother to care for children in her home and expected to care for one or more children, in addition to her own two children, in her home as a foster mother.

Respondent's evidence shows that she is employed by a radio station as a stenographer-receptionist in Shawnee at a salary of $40 per week and that she is due a raise in salary soon; that her parents live near Shawnee and have a good home in which her son can stay if necessary; that she has kept the child with her in Shawnee, keeping him in nursery school or hiring a woman to look after him during the day while she is at work and she, herself, keeping the boy the rest of the time; that she has taken the boy to church regularly; that he would be ready to enter kindergarten in two more months; that she has and can furnish proper and healthful surroundings for the child and can support him from her own earnings, regardless of whether petitioner pays the child support payments provided by the divorce decree or not.

The court entered its order denying the writ allowing the child to remain in the custody of respondent. From order overruling motion for new trial petitioner appeals.

Petitioner contends that the trial court under the doctrine of comity between states should have granted the writ of habeas corpus and granted petitioner the custody of the child for six months as provided by the Illinois decree; that before our courts can disregard the judgment of a court of a sister state awarding the custody of a minor child it must be shown that the minor child was brought into this state by a person having lawful custody thereof and that there is a change of conditions affecting the welfare of the child, citing Chapman v. Walker, 144 Okl. 83, 289 P. 740. Petitioner admits that respondent had the permission of the court to come to Oklahoma for a temporary visit, but contends that she came to Oklahoma, bringing the child, with the unlawful intent to remain here in violation of the court's order. He further contends that the situation of the parties is unchanged.

since the entry of the divorce decree and therefore the Illinois divorce decree is res adjudicata as to the custody of the child, citing Ex parte Miller, 201 Okl. 499, 207 P. 2d 290.

 At the time respondent came to Oklahoma she admittedly had lawful custody of the child. She also had written permission of the Illinois court to bring the child to Oklahoma. Unquestionably then the child was legally brought into Oklahoma. Whether she came into the state with, as petitioner claims, "the unlawful intent" to remain permanently in Oklahoma (a fact she denied) or whether she decided to remain permanently after coming here is immaterial. We have held in the case of Gaunt v. Gaunt, 160 Okl. 195, 16 P.2d 579, under facts essentially the same on the point, that the child was legally brought into the State of Oklahoma. In said case the mother had legal custody of the child its father having custody on alternate Sundays but was restrained from leaving the state of Kansas with the child without the permission of the court. She obtained permission of the court to bring the child to Oklahoma for a two weeks' visit and came to Oklahoma with the child, where she and the child remained and became domiciled. We held that such provision in the divorce decree does not preclude an Oklahoma court of competent jurisdiction from afterwards making an order awarding the custody of the child to the mother upon a sufficient showing of a change in situation of the parties, where the best interests and welfare of the child will be advanced thereby.

In the instant case the evidence shows that petitioner no longer lives in the state of Illinois and were he awarded custody of the child for six months the child would not be under the jurisdiction and control of the Illinois court, so that its decree could be enforced to give the mother custody at the end of the six month's period. The evidence also shows that petitioner is a student doing graduate work in medicine; that he has a limited income; that he has remarried and has a wife, another child of his own, and a stepchild dependent upon him. It is admitted that respondent is a fit and proper person to have custody of the child, that she is financially able to care for him and that she has been giving him proper care, religious education, and in every way affording a proper environment for the child. Under these facts and circumstances there definitely has been a change in the situation of the parties since the entry of the divorce decree, and we cannot say as a matter of law that the finding of the trial court, which inheres in its judgment, that it is to the best interests and welfare of the child that he remain in the custody of his mother is clearly against the weight of the evidence.

Affirmed.